**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ISAAC HARRIS,

                Plaintiff,                            Case No. 1:12-cv-940

       v.                                  Spiegel, J.
                                                Bowman, M.J.

ROSALIE BATTLE,

                Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Isaac Harris initiated this action by filing a *pro se* complaint against a single defendant, Rosalie Battle, pursuant to 42 U.S.C. § 1983. (Doc. 1). Upon initial screening for frivolousness, the Court determined that the complaint was deserving of further development because "[l]iberally construed, the complaint states a First Amendment retaliation claim." (Doc. 6). On July 3, 2013, Defendant moved for summary judgment on grounds that Plaintiff had failed to exhaust his administrative remedies prior to filing suit. For the following reasons, Defendant's motion should be granted.

**I. Background**

Plaintiff is a prisoner of the State of Ohio, formerly incarcerated at the Warren Correctional Institution in Lebanon, Ohio, but currently incarcerated at the Mansfield Correctional Institution. Defendant Rosalie Battle is a Unit Manager at the Warren Correctional facility.

Plaintiff's complaint alleges that Defendant Battle committed several retaliatory

acts against him as a result of his participation in the grievance process, thereby violating Plaintiff's First Amendment rights. Plaintiff alleges that Defendant's retaliatory action began on or about July 31, 2012, after he went to her office "to ask why she had been talking about him and spreading false information." (Doc. 1 at 5). Plaintiff seeks punitive damages against Defendant "in an amount that exceeds $100,000.00," as well as injunctive relief protecting him form further discrimination or retaliation. (Doc. 1 at 6). Plaintiff alleges in his complaint that he complied with the prison's three-step grievance procedure for the allegations in his complaint prior to filing suit, by filing an informal complaint, a grievance to the Institutional Inspector, and last, an appeal to the Chief Inspector. (Doc. 1 at 3).

## II. Analysis

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support

of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party.  *Id.* at 252.

### B.  Defendant's Motion for Summary Judgment

#### 1.  Applicable Grievance Procedure

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C §1997e, *et seq.*, requires a prisoner to exhaust all available state administrative remedies before filing suit in federal court to challenge conditions of his confinement. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Thus, exhaustion is a mandatory prerequisite to a prisoner filing a civil rights lawsuit in federal court.  What constitutes proper exhaustion is defined by the state prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 211, 218 (2007). "Failure to exhaust is an affirmative defense under the PLRA."  *Id.* at 216.  Defendants bear the burden of proving the failure of a prisoner to properly exhaust all available administrative remedies.  *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

In contrast to the allegation in Plaintiff's complaint that he exhausted the prison grievance process prior to filing this lawsuit, Defendant's motion for summary judgment provides definitive and unrebutted evidence that confirms Plaintiff's failure to exhaust. As discussed below, in particular, Plaintiff failed to exhaust the second and third steps

of the three-step process.  Defendant Battle has met her burden of production under Rule 56, shifting the burden back to Plaintiff to present significant probative evidence to defeat her motion for summary judgment.  Plaintiff has failed to satisfy that burden; therefore Defendant is entitled to judgment as a matter of law.

The procedure for filing a grievance against Defendant Battle is set forth in Ohio Administrative Code 5120-9-31(K).  The first step of the three-step process allows the inmate to file an informal complaint to the direct supervisor of the department or staff member responsible for the subject matter of the complaint.  Ohio Admin. Code 5120-9-31(K)(1).  The complaint must be filed within fourteen days of the events giving rise to the complaint, and the supervisor has 7 days to respond in writing to the complaint.  *Id.*

If the inmate is dissatisfied with the response to step one, he can proceed to the second step of the process by obtaining a notification of grievance form from the inspector of institutional services.  Ohio Admin. Code 5120-9-31(K)(2).  That second-stage form must be filed within fourteen days from the date of the informal complaint response and the institutional inspector must respond in writing within fourteen days of receiving that second-step grievance. *Id.*  If the inmate is still dissatisfied, the inmate may proceed to the third and final step by requesting an appeal form from the inspector of institutional services.  The appeal form must be filed with the Office of the Chief Inspector within fourteen days of the date of the disposition of the second-step grievance.  Ohio Admin. Code 5120-9-31(K)(3).  The Chief Inspector must respond in writing within thirty days of receiving the appeal; the decision of the Chief Inspector is final. *Id.*

### 2.  Plaintiff's Non-compliance with the Grievance Procedure

Attached as an exhibit to Defendant's motion for summary judgment is Plaintiff's entire grievance file, including all grievances filed between July 31, 2012, the date that he alleges that Defendant first engaged in retaliatory conduct against him, up to and including December 6, 2012, the date that Plaintiff filed the instant complaint.  (Doc. 17-1, Hunyadi Declaration at ¶12; Grievance File, Doc 17-2).  Within the course of that four month period of time, Plaintiff filed a total of nine informal complaints, reflecting Plaintiff's general compliance with the first step of the grievance procedure.

Three of those Informal Complaint Resolution ("ICR") forms include allegations against Defendant Battle; the remaining six do not appear to be related to this litigation. Of those ICRs related to Plaintiff's dispute with Defendant, the first is dated August 7, 2012 and addressed to the Warden.  In that form, Plaintiff alleges he is being "targeted" for "racial [sic] and retaliation."  (Doc. 17-2 at 1).  That ICR was returned to Plaintiff without consideration of its merits, because he failed to comply with the requirement that he file his compliant with the supervisor of the staff person most responsible for the complaint.  Plaintiff was instructed to file with Ms. Crawford to the extent that he wished to file an ICR against unit staff.  (*Id.*).

Rather than filing an appeal of that response, the record reflects that Plaintiff complied with the instruction by filing a second ICR with Ms. Crawford on the same August 7, 2012 date.  In his second ICR, Plaintiff complained of Defendant Battle (along with three other staff members not named as Defendants herein) targeting and discriminating against him for filing prior ICR forms. (Doc. 17-2 at 2).  Plaintiff complained that he had a "false allegation written agiesnt me" [sic] and that he was

stripped of "every program and job" and denied merit status.  (*Id.*).  On August 9, 2012, Ms. Crawford responded to Plaintiff's second relevant ICR, essentially denying Plaintiff's allegations of improper retaliation by Defendant Battle.  (*Id.*).  Again, there is no evidence that Plaintiff sought to appeal Ms. Crawford's response.

On August 19, 2012, Plaintiff filed a third ICR, directed to "Deputy Warden Operations," alleging that Defendant Battle "wrote a conduct report against me….[that] was thrown out but I was still moved from merit to 2A."  (Doc. 17-2 at 3).  Plaintiff's ICR continues with allegations that Defendant Battle "wrote another ticket but backdated it to make it look like it was written on 7/31/2012…."  (*Id.*).  Plaintiff alleges that Battle's conduct shows "an abuse of the conduct-report writing and I ask that something be done about this."  (*Id.*).  Plaintiff's August 19th ICR was answered on the merits on August 22, 2012, again essentially denying any wrongdoing by Defendant Battle.  (Doc. 17-2 at 3).  Plaintiff did not appeal that ICR.

Each of the three forms completed by Plaintiff contains, in italicized language at the bottom of the form, the statement:  "Complaints not resolved may be addressed in accordance with 5120-9-31."  Based upon the lack of any evidence that Plaintiff completed the second step of the referenced regulation by filing a Notification of Grievance ("NOG") form in order to appeal the resolution of any of the three ICRs concerning Defendant Battle, Defendant is entitled to summary judgment.    While Plaintiff's failure to appeal at the second step of the grievance process entitles the Defendant to judgment, the Defendant also would be entitled to judgment based upon Plaintiff's failure to complete the third step of the process, by filing a further timely

appeal to the Chief Inspector concerning his claims against Defendant Battle.[1]

There is no evidence that Plaintiff attempted to file any type of appeal within fourteen days of the denial of his three relevant ICRs, as is required under step two of the grievance process.  In response to Defendant's motion, Plaintiff acknowledges the existence of further procedures, but vaguely suggests that exceptions exist that should excuse his non-compliance.  For example, Plaintiff notes time limitations that apply to the process, including that, "the process has to be started within 14 days of the dispute." (Doc. 19 at 1).  He also points out that the grievance process is not available to challenge disciplinary actions by the RIB Board.  (*Id.*).  Last, Plaintiff complains that one cannot grieve a "sittuation [sic] that is a state law."  (*Id.*).  Ironically, Plaintiff has attached to his response, in opposition to summary judgment, a copy of the Inmate Grievance Procedure provided to him.  (Doc. 19 at 3-4).  That document details Steps 2 and 3 of the appeal process, as explained in Administrative Rule 5120-9-31 of the Ohio Revised Code.  (*Id.*).

As stated, Plaintiff's response implies that he believes that his failure to appeal the denial of his ICRs by complying with Steps 2 and 3 of the Grievance Process should be excused.  Plaintiff suggests that full exhaustion would have been futile, either because his appeal would have been untimely, or because the subject matter of his grievance was not a matter that is grievable.[2]  However, with respect to the time limits for appeal, an inmate's failure to comply with time limits or other procedural rules is

---

[1]Battle also argues that the ICRs that Plaintiff filed against her were legally insufficient to provide fair notice of all of Plaintiff's claims.  In light of the brevity of this alternative argument, as well as Defendant's entitlement to judgment based on Plaintiff's failure to comply with all three steps of the grievance process, the undersigned finds no need to discuss Defendant's "fair notice" argument.

[2]It bears repeating that Plaintiff alleged in his complaint that he did in fact complete Steps 2 and 3 of the grievance process prior to filing suit.

grounds for dismissal of a later-filed federal complaint. *See White v. McGinnis,* 131 F.3d 593, 595 (6th Cir. 1997)(prisoner who only partially complied with grievance procedure did not fully exhaust his administrative remedies as required by the PLRA). Plaintiff's second assumption, that his First Amendment may not have been fully grievable, is equally without merit.

The question is not whether Plaintiff subjectively believed a grievance procedure to be unavailable, but whether objectively, the procedures were "unavailable" due to the actions of prison officials. Plaintiff's prior ICRs against Defendant Battle, as well as the complaint herein, generally alleges that Defendant violated his First Amendment rights by retaliating against him for filing one or more grievances. Plaintiff's First Amendment retaliation claim was fully grievable, and Plaintiff complied with the first step of the grievance process by filing three separate ICRs concerning his allegations. No prison official impeded Plaintiff from appealing the denial of those ICRs concerning Defendant Battle's alleged retaliatory conduct. Thus, on the record presented, Plaintiff objectively could have and should have complied with Steps 2 and 3 of Ohio's grievance procedures, which procedures were "reasonably available" to him.

Although not attached to Plaintiff's response in opposition to Defendant's motion, Defendant acknowledges that Plaintiff tendered as an exhibit to a separate "motion for discoveries" a document that purports to be a "Notification of Grievance" dated August 24, 2012. That document ostensibly could be evidence of Plaintiff's compliance with Step 2 of the grievance procedure. (Doc. 18 at 10). However, Defendant denies that anyone at the prison received a copy of that document, and it is not part of Plaintiff's grievance file. (Doc. 17-2). The document does not contain any response, stamp, or

8

writing by any prison official.   Assistant Chief Inspector Hunyadi has provided an additional statement confirming that his office did not receive the referenced document. (Doc. 20-2 at ¶3).  Based upon the evidence authenticated by Defendant and tendered both in support of its initial motion for summary judgment, and with its reply memorandum, and based further on Plaintiff's failure to include any contrary evidence in response to Defendant's motion, the Court does not find the unauthenticated NOG attached to Plaintiff's motion to be sufficient to create a genuine issue of material fact on whether or not Plaintiff complied with Step 2 of the grievance procedure.  Even if the Court were to construe the evidence to create an issue of fact concerning Plaintiff's exhaustion of Step 2 of the process, there is no dispute that Plaintiff failed to comply with Step 3 of the grievance process.

With respect to Step 3, it is true that Plaintiff also attached to his "motion for discoveries" a document that purports to be "Warden's Decision on Appeal."  (Doc. 18 at 11).  However, that document is entirely separate from the type of Step 3 appeal form that must be filed with the Office of the Chief Inspector within fourteen days of the date of the disposition of the second-step grievance. *See* Ohio Admin. Code 5120-9-31(K)(3).  As an unrelated document, the Defendant has confirmed that the tendered "Warden's Decision on Appeal" is not part of Plaintiff's grievance file.  (See Doc. 17-2). In fact, on its face, the "Appeal" document purports to be the Warden's affirmation of an August 17, 2012 RIB decision that Plaintiff violated institutional Rule 8, rather than an

appeal of Plaintiff's formal grievance against Defendant Battle.[3]

Plaintiff has presented no evidence to excuse his failure to comply with the appeal portions of the grievance process. This is not a case where prison authorities utterly failed to respond to a grievance, or provided erroneous advice as to the correct procedures.  Because Plaintiff failed to properly follow the second and third steps of the appeals process concerning his informal grievances, summary judgment should be granted in favor of Defendant Battle.

### III.  Conclusion

For the reasons stated, **IT IS RECOMMENDED** that Defendants' motion for summary judgment (Doc. 17) be **GRANTED in its entirety** and that this matter be **TERMINATED** from the active docket of the Court**.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[3]The fact that Plaintiff alleges that Defendant Battle was motivated by retaliation to write him up for that rule violation does not convert his appeal of his RIB conviction into a separate appeal within the grievance process.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ISAAC HARRIS,                                   Case No. 1:12-cv-940

       Plaintiff,                              Spiegel, J.
                                           Bowman, M.J.

    v.

ROSALIE BATTLE,

       Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).